UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PNC BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 11 C 2126 |
| | ) | |
| DAVID J. DUBIN and STUART KANTOFF, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Plaintiff PNC Bank, National Association's ("PNC Bank") motion for turnover of assets. For the following reasons PNC Bank's motion is granted.

### BACKGROUND

On May 28, 2011, PNC Bank filed a one-count complaint seeking to cure a breach of a payment guaranty entered into by the Defendant David Dubin ("Dubin"). The Court entered a judgment against Dubin in the amount of $6,464,473.60 on June 28, 2012. Following the entry of judgment, PNC Bank filed citations to discover assets and engaged in the discovery of assets.

On February 1, 2013 PNC Bank filed a motion for the turnover of assets, which seeks the turnover of "monies, choses in action, property or effects" pursuant to 735 ILCS 5/2-1402, for the following assets (collectively "Assets"):

(a)  A purchase money promissory note dated April 3, 2012 by Naganathan Guru ("Guru") in favor of Dubin, in the amount of $175,000 ("Note").

(b)  All debts due to Dubin or the David J. Dubin Revocable Trust for the following entries (collectively "Dubin entities"):

1. 35th & Morgan Development Corp.;
2. 3600 S. Western Ave. Development Corp.;
3. 3670 N. Milwaukee Ave. Development Corp.;
4. 3927 W. Belmont Commercial Property LLC;
5. 3963 W. Belmont Residential Property LLC;
6. Dubin & Associates, Inc.;
7. Dubin Does the Town Development Corp.;
8. Dubin Holdings, Inc.;
9. Dubin Residential Communities Corp.;
10. Footwear Factory Development Corp.;
11. Greenleaf Rentals, LLC;
12. Kuggel Investment Corp.;
13. Tampa Investments LLC;

(c)  All monies in each of the following accounts (collectively "College Accounts"):

1. American Funds College Savings Plan account ending 5084, valued at approximately $429,762.28 ("American Plan");

2. Fidelity Investments College Education account ending 5084, valued at approximately $73,203.00 ("Fidelity 5084");

3. Fidelity Investments College Education account ending 5092, valued at approximately $125,095.00 ("Fidelity 5092");

4. Fidelity Investments College Education account ending 5114, valued at approximately $88,164.88 ("Fidelity 5114").

On February 25, 2013, Dubin's children made a series of adverse claims against the College Accounts. Michelle Dubin made an adverse claim against the American Plan and the Fidelity 5092 plan. Daniel Dubin claimed an adverse interest in the Fidelity 5084 plan. Finally, Jacob Dubin made an adverse claim against the Fidelity 5114 plan.

On February 26, 2013 an amended adverse claim was filed by 3670-3720 Capital Partners, LLC asserting a perfected security interest in all of Dubin's assets, and the rights and interests of Dubin Entities. Additionally on February 26, 2013, an amended adverse claim was brought by 2358 Capital Partners, LLC asserting a perfected security interest in all of Dubin's assets, and the rights and interests of Dubin Entities.

PNC Bank asserts that they are entitled to Dubin's 1) rights to payments made on behalf of the Note; 2) rights to payment on various other debts owed to Dubin through Dubin Entities; and 3) money held in College Accounts owned by Dubin.

## LEGAL STANDARD

Federal Rule of Civil Procedure 69 requires federal courts to apply "the law of the forum state" in choosing the procedures to enforce federal court judgments. *Cacok v. Covington*, 111 F.3d 52, 53 (7th Cir. 1997). In Illinois, supplementary proceedings to enforce a judgment are governed by section 5/2-1402 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-1402. Under

3

section 5/2-1402, a judgment creditor who seeks to enforce a judgment may initiate supplementary proceedings to discover assets of the judgment debtor, and may seek an order from the court "compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." 735 ILCS 5/2-1402(a). If the court determines that the judgment has not been satisfied, it may compel the judgment debtor to deliver "money, choses in action, property or effects in his or her possession or control" to be applied in satisfaction of the judgment. 735 ILCS 5/2-1402(c)(1). Section 5/2-1402(m) provides that a citation to discover assets creates a lien on all "nonexempt personal property, including money choses in action, and effects of the judgment of the judgment debtor." This statute is to be construed liberally and vests courts with broad powers to enforce judgments. *Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1136 (7th Cir. 2001).

### DISCUSSION

**1. Purchase Money Promissory Note**

PNC Bank contends that the April 3, 2012 Note for $175,000 is a "chose in action" and subject to garnishment. 735 ILCS 5/2-1402(c)(1). Dubin asserts that due to Guru's suspension of payments on the Note that he lacks possession and control of the payments which renders a turnover of the asset improper.

The term "chose in action" has been interpreted expansively and includes an "infinite variety of contracts, covenants and promises which confer on one party a right to recover a personal chattel or a sum of money from

another by action." *People, for the Use of Vancil Motor Co. v. Weaver*, 40 N.E.2d 83, 84 (Ill. App. Ct. 3rd Dist. 1942). A chose in action is a right to a debt of money due on a bond, note or other contract. *Id*. PNC Bank seeks the turnover of Dubin's right to repayment on the Note. Dubin's right to repayment under the Note is a right to future payment pursuant to the terms of the Note's repayment provision. Even though payments have not been made by Guru, the right to seek future payments pursuant to the Note is still a chose in action and subject to garnishment. The Court finds that PNC Bank is entitled to garnishment of Dubin's right to receive payment on the April 3, 2012 Note.

**2. Dubin's Rights to Payment**

PNC Bank seeks the garnishment of the monies due from all Dubin Entities. Dubin asserts that a third party, 3670-3720 Capital Partners, LLC and 2358 Capital Partners, LLC (collectively "Capital Partners") each hold a perfected security interest in any monies due to Dubin flowing from the Dubin Entities.

Initially, Dubin has failed to establish his standing to assert the rights of Capital Partners, a third party. Dubin asserts that the interests of Capital Partners would be imperiled if the Court grants PNC Bank's turnover request. Capital Partners, as the party whose interests are in question, has not filed an appearance or objected to PNC Bank's request. Dubin has not provided the Court with any information concerning the ownership status of Capital Partners

or asserted a basis which justifies asserting an argument on behalf of a third party. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) (an implicit right of action may override the concerns underlying the usual reluctance to exert judicial power when the plaintiff's claims to relief rests on the legal rights of third parties).

Assuming arguendo, that Dubin has standing to present a legal argument on behalf of Capital Partners, Dubin has not provided the Court with adequate evidence to support Capital Partners' claim of a previously perfected security interest in any of the Dubin Entities. The record does not contain a security agreement or any documentation of the perfection of Capital Partner's security interests. The Court finds that PNC Bank may garnish the debts due to Dubin Entities.

**3. Dubin's College Accounts**

PNC Bank asserts that four College Accounts held in Dubin's name are personal property and are consequently subject to garnishment. Dubin counters that he does not have an ownership interest in the College Accounts. PNC Bank submits that the College Accounts are subject to adverse claims made by the beneficiaries of the accounts, his children.

Despite Dubin's aggressive account protection strategy undertaken on February 25, 2013, he cannot avoid the fact that he is listed on each of the

College Accounts as the owner or participant of the account.[1] The College Accounts, or 529 plans, allow contributions to the account established for a designated beneficiary. *See* 26 U.S.C. § 529. As the owner of the College Account, Dubin has the ability to request a non-qualifying withdrawal at any time, and under such circumstances, funds in the 529 plan are considered property of the "owner" or "participant." *See In re Addison*, 540 F.3d 805, 819-20 (8th Cir. 2008) (holding that funds in a 529 account with the debtor's minor children named as the beneficiary were included in the property portion of the bankruptcy estate). One feature of the 529 plan is that the account owner, in this case Dubin, maintains control of the funds until the funds are withdrawn to pay for higher education expenses. 12 Ill. Prac., Fam.L. 26 U.S.C. §529 (2012 ed.). All of the accounts specify Dubin's children as beneficiaries for one or more accounts. None of the accounts include any indication that Dubin's children possess an ownership interest. The Court deems all four college savings plans to be owned by Dubin and subject to turnover.

---

[1] American Funds participation agreement states that "The Account Owner may use the funds in the Account for any purpose and may make withdrawals at any time." American Funds, College America Program Description, 9 (2013), http://www.american funds.com/pdf/cagebr-001_529pd.pdf. Similarly, the Participation Agreement for the Unique College Invest Plan states that the account owner "may direct the Trustee to distribute part of all of the money in a Plan Account at any time." See Fidelity Investments, College Investing Plan Fact Kit, 67 (2012), http://personal.fidelity.com/accounts/services/content/NH_account_details.shtml#; see also Fidelity.com, the ABC's of 529 College Savings Plans, https:www.fidelity.com/viewpoints/abcs-of-529-college-savings (last visited March 28, 2013) (stating that Fidelity's 529 Plans are not custodial accounts and in Fidelity's 529 college savings plan "the account owner calls the shots on how and when to spend the money").

# CONCLUSION

For the aforementioned reasons, the Court 1) compels Dubin to deliver to PNC Bank all rights, title, interest in and to the Assets; 2) compels Dubin to assign to PNC Bank all debts and choses in action included in the Assets, thereby granting to PNC Bank the exclusive right to receive payment; and 3) authorizes PNC Bank to maintain an action against any person or corporation which is indebted to Dubin, as set forth in the description of Assets, for recovery of the debt and forbidding the transfer or other disposition of the debt until an action is commenced and prosecuted to judgment.

_____
Charles P. Kocoras
United States District Judge

Dated:   April 3, 2013   .